SOUTH PORTO RICO SUGAR Co., Appellant and Appellee, *v.* PUBLIC SERVICE COMMISSION, Appellee and Appellant; JOSÉ RAMÓN QUIÑONES, Intervener and Appellant.

No. 10546. Argued November 3, 1952.—Decided November 4, 1954.

---

*José Trías Monge, Attorney General, A. Torres Braschi* and *Edgar S. Belaval, Assistant Attorneys General,* for appellee Public Service Commission. *Pablo Defendini* for intervener-appellant. *James R. Beverley, R. Castro Fernández* and *Francisco Castro Amy* for appellee. *Charles R. Hartzell, Rafael O. Fernández* and *José L. Novas* as *amici curiae.*

PER CURIAM.

This is a motion filed by South Porto Rico Sugar Co. for reconsideration of our opinion and judgment in *South Porto Rico Sugar Co.* v. *Public Service Comm'n,* 73 P.R.R. 557. The facts are stated fully in the said opinion and need not be repeated here. We do not stop to re-examine the question of whether the company purchased the cane from its colonos or whether it acted as their agent for the sale of the sugar produced therefrom. Assuming without deciding that such purchases took place, we are nevertheless required to determine what purchase prices were established by the parties for the 12.55 per cent of the sugar which became marketable as additional quotas during 1949.

We are satisfied from the evidence, including the Notice set forth in 73 P.R.R. at p. 565, footnote 3,[1] that the arrangement between South Porto Rico Sugar Co. and its colonos was that, for both original and additional quota sugar, the colonos would be paid forthwith the average monthly price of sugar delivered in New York, *provided the sugar was marketable at the date of delivery.* We think the foregoing italicized clause was an implied condition of the arrangement between the parties.[2] It follows that, for purposes of fixing the purchase prices of additional quota sugar, the dates of delivery must be considered as postponed until the dates the sugar was salable under ad-

---

[1] Here we likewise assume without deciding that the Notice represented the terms of a contract between the company and its colonos.

[2] In this case there was no contract which provided expressly in so many words that additional quota sugar shall be liquidated on the basis of the price as of the date of actual delivery rather than as of the date it became salable. We therefore need not determine whether such a contract would be valid under Act No. 221, Laws of Puerto Rico, 1942.

ditional quotas. Only in this way could the intention of the parties—that, with regard to sugar produced from colono cane which is liquidated in cash, the company shall have the choice (1) of selling the sugar immediately at the prevailing market price, or (2) of holding it for speculation —be fulfilled. Our conclusion is reinforced by the fact that the company's obligation to pay a particular price did not become enforceable until the additional quota sugar became salable.[3] Consequently, as to the additional quota of 12.55 per cent, the company was required to liquidate at the average monthly price of sugar delivered in New York as of the respective dates the additional quotas became effective.

Our judgment ordered the company "to liquidate the colonos' sugar of the additional quotas at the prices at which it sold said sugar, less selling and marketing expenses." For the reasons stated herein, the judgment will be modified to provide that the company shall liquidate the sugar of the additional quotas at the average monthly prices of sugar delivered in New York as of the effective dates of the additional quotas, less selling and marketing expenses.

The motion for reconsideration will be denied.

Mr. Justice Ortiz and Mr. Justice Sifre did not participate herein.

---

[3] It is interesting to note that, once the problem involved herein arose in 1949, the Federal Secretary of Agriculture made exactly the same provision for the 1950–51 crop as we reach here. In Sugar Determination 877.3, dated December 13, 1950, the Secretary provided in (b) *Basic payment*, (4) (ii), that if settlement is made in cash, the company shall pay "For sugarcane from which was made the producer's share of raw sugar which is within an increase in the marketing allotment of the processor-producer occurring after the termination of grinding of all 1950–51 crop sugarcane in Puerto Rico, the average price of raw sugar for the marketing days within the thirty-day period (commencing with the first marketing day) immediately following the effective date of the order permitting the marketing of such raw sugar, converted to the f.o.b. mill price." 15 F. R. 9036, 9037.